RECEIVED

DEC 0 6 2022

CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

TONY DEJUAN JACKSON,
      Plaintiff,

**CIVIL COMPLAINT REQUESTING INJUNCTIVE RELIEF, DECLATORY JUDGEMNT AND TEMPORARY RESTRAINING ORDER.**

22-cv-3034 PAM/TNL

(To be assigned by Clerk of District Court)

**DEMAND FOR JURY TRIAL**

YES __[X]__   NO____

**v.**

STEVE SIMON, STATE OF MINNESOTA SECRETARY OF STATE,
PAUL SCHNELL, COMMISSIONER OF MINNESOTA DEPARTMENT OF CORRECTIONS,

      Defendants.

---

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER
42 U.S.C. § 1983**

---

SCANNED

DEC 0 6 2022

U.S. DISTRICT COURT ST. PAUL

## TABLE OF CONTENTS

**PAGES**

I.      NATURE OF THE CASE----------------------------------------------------------

II.     JURISDICTION----------------------------------------------------------------

III.    VENUE-------------------------------------------------------------------------

IV.    STATEMENT OF PLAINTIFF----------------------------------------------------

V.     FACTS: ------------------------------------------------------------------------- -

        FACTUAL ALLEGATIONS: Against Individual DEFENDANTS --------------
        STEVE SIMON, STATE OF MINNESOTA SECRETARY OF STATE,
        PAUL SCHNELL, COMMISSIONER OF MINNESOTA DEPARTMENT OF
        CORRECTIONS,

## II. JURISDICTION:

1.      Eighth Amendment Violations, Cruel and Unusual Punishment,

2.      [1] The complete Denial or abridgement of right to vote on account of race or color

through voting qualifications or prerequisites; establishment of violation: 52 USCA 10301

– Effective September 1st, 2014, (2) Denial or Abridgement of right to vote on account of

Plaintiff Jackson's Status as Person Who is Incarcerated, and Prison-based Gerrymandering

for political gains.

3.      This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under

color of state law, of rights secured by the Constitution of the United States And 42 U.S.C § 1985(2)

And 42 U.S.C. § 1986 And 42 U.S.C.S § 1973c..  Jurisdiction is proper in this Court pursuant to 28

U.S.C §§ 1331 and 1343(a)(1)(2)(3)(4).

4.      Plaintiff seeks declaratory relief pursuant to 28. U.S.C. Section 2201 and 2202. Plaintiff's

claims for injunctive relief are authorized by U.S.C. Section 2284. And Rule 65 of the Federal Rules of

Civil Procedure and Pursuant to Federal Rules OF Civil Procedure Rule 20(B)(2).

This Court has jurisdiction over regulations promulgated there under, pursuant to 28 U.S.C. §§ 1331

and 1343.) and 42 U.S.C. § 1988 to award Plaintiff reasonable fees, litigation expenses, and costs.

### III. VENUE

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in

the District of Minnesota; Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the District of

Minnesota.

6.      M.S.A. Stat. 201.014 201.014, Eligibility to vote Correctness: Subdivision 1. Requirements.

Except as provided in sbdivision2, an individual who meets the following requirements at the time of

an election is eligible to vote. The individual must:

(1) <u>Be 18 years of age or older;</u>

(2) <u>Be a citizen of the United States; and</u>

(3) <u>Maintain residence in Minnesota for 20 days immediately preceding the election.</u>

<u>Subd.2. Not eligible. The Following individuals are not eligible to vote. Any individual:</u>

(1) <u>convicted of treason or any felony whose civil rights have not been restored;</u>

(2) <u>under a guardianship in which the court order revokes the ward's rights to vote, or</u>

(3) <u>found by a court of law to be legally incompetent.</u>

<u>Subd.3. Penalty. Any individual who votes knowingly is not eligible to vote is guilty of a felony.</u>

7. <u>Voting Rights Act: Title 52 U.S.C.A § 10101(a)(1): United States Code Annotated (USCA) Statute 10301. Denial or abridgement of right to vote on account of race or color through voting qualifications or prerequisites; establishment of violation: 52 USCA 10301 – Effective September 1st, 2014. Statute 10304. Alteration of voting qualifications; procedure and appeal; purpose or effect of diminishing the ability of citizens to elect their preferred candidates.</u>

## VI. FACTS

**8.**      The Plaintiff Jackson who is Black Male age 48, and a Person who is incarcerated, and who is a person born or Naturalized in the United States; is seeking injunctive and Declaratory Relief against the Defendants Acting as the Arm of the State of Minnesota, for continuing Violations of the Eighth Amendment regarding the Plaintiff Jackson's Constitutional Rights to be free from Punishment that is Cruel and Unusual, through the implantation and enforcement by the Defendants; STEVE SIMON, STATE OF MINNESOTA SECRETARY OF STATE,  PAUL SCHNELL, COMMISSIONER OF MINNESOTA DEPARTMENT OF CORRECTIONS, GUY BOSCH, WARDEN STILLWATER CORRECTIONAL FACILITY,  of Discriminatory Voting Disenfranchisement Legislation, Statutes, policies, practices, procedures, and State of Minnesota Constitutional provisions, and Prison-Based Gerrymandering, for Political Gains, and  Financial Gains.

**9.**      Gerrymandering & Suppression of Fair Representation Regarding the Plaintiff Jackson who is a Black incarcerated person being Disenfranchised; Violates the Eighth Amendment's Prohibition against Cruel and Unusual Punishment, for Purpose of § 5 of Voting Rights Act which has always been to ensure that no voting-procedure changes would be made that lead to retrogression in position of racial minorities with respect to their effective exercise of the electoral franchise. Voting Rights Act of 1965, § 5, as amended, 42 U.S.C.A. § 5, as amended, 42 U.S.C.A. § 1973c.

**10.**      The State must show a compelling state interest to justify exclusion of the Plaintiff Jackson who is Black Person who is incarcerated, from the franchise as Cause by the Defendants; STEVE SIMON, STATE OF MINNESOTA SECRETARY OF STATE,  PAUL SCHNELL, COMMISSIONER OF MINNESOTA DEPARTMENT OF CORRECTIONS, GUY BOSCH, WARDEN STILLWATER CORRECTIONAL FACILITY, All Acting in their Official Capacities, All Acting as the Arm of the State of Minnesota, to justify the Total disenfranchisement and Completed denial of the Plaintiff Jackson's Constitutional Right to vote.

11.     The Defendants Eighth Amendment Violations are part of a continuous pattern of Intentional and premediated Civil Rights Violations that are Cruel and Unusual Punishment, and designed to diminish the ability of the Plaintiff Jackson who is a United States Citizen from using the Democratic Voting Process to hold Political Candidates accountable regarding the sadistic subjection to Oppressive and A typical Cruel and Unusual Prison Condition in relations to the ordinary incidents of Prison Life, Mass Incarceration, and Prison-Based Gerrymandering for Political Gains and Financial Gains.

12.     The Plaintiff Jackson states that such Voting Rights Restriction imposed upon him due to the Plaintiff Jacksons race as a person who is Black, and status as a Person who is Incarcerated, amounts to punishment that is Cruel and Unusual, and therefore Prohibited by the Eighth Amendment of the United States Constitution. Black Americans account for 12.7 percent of the U.S. population but comprise 41.3 percent of the federal and state prison population. Black people like the Plaintiff Jackson are incarcerated five times more than white people.

13.     The Plaintiff Jackson asserts that the Named Defendants and not yet named Defendants are part of an ongoing complicit conspiracies to use the Plaintiff Jackson's Race and status as a incarcerated person, to benefit politically, financially and personally, by subjecting the Plaintiff Jackson at all times to Slavery and Involuntary servitude, as Cause by the Defendants; **STEVE SIMON, STATE OF MINNESOTA SECRETARY OF STATE,  PAUL SCHNELL, COMMISSIONER OF MINNESOTA DEPARTMENT OF CORRECTIONS, GUY BOSCH, WARDEN STILLWATER CORRECTIONAL FACILITY, All Acting in their Official Capacities,** All Acting as the Arm of the State of Minnesota, to violate the Voting Rights Act Title 52 U.S.C.A § 10101(a)(1) and the Fourteenth Amendments Sections (1)(2) and (5), By disenfranchising the Plaintiff Jackson's Constitutional Rights to Vote and Civil Rights as outlined in the complaint.

14.     The implementation of unconstitutional State of Minnesota Voting Restriction Laws and Prison-Based Gerrymandering practices, all being used for Political Gains in the form of redistricting and financial gains in the form of Federal Grants and State Legislative Appropriated funding received by the State of Minnesota, Washington County and the City of Bayport Minnesota, based upon the previously collected Census Data collected and more recent year 2020 Census Data, has created on going Toxic conditions of confinement at Stillwater Prison And All other similarly situated Minnesota Correctional Facilities that are Cruel and Unusual punishment.

15.     The ongoing Voting Rights Disenfranchisement, and Civil Rights violations, cannot be reconciled with the constitutional Commands regarding the Eighth Amendment's Prohibitions against Cruel & Unusual Punishment, the Evolving Standards of Decency of a Maturing Society doctrine and Todays Evolving Eighth Amendment understanding which prohibits punishments which, although not physically barbarous, involve the unnecessary and wanton infliction of pain, or are grossly disproportionate to the severity of the crime for which the Plaintiff Jackson was convicted, are systemic and deliberate indifference. and clearly motivated by political and financial incentives by the Defendants and Not yet Named Defendants representing the Arm of the State of Minnesota.

16.     The Plaintiff Jackson's Mass Incarceration combined with Toxic, sadistically Cruel and Unusual Prison Conditions that continues to subject the Plaintiff Jackson to ongoing psychological torture regarding the toxic conditions of confinement at Stillwater Prison, which places the Plaintiff Jackson under ongoing Threat of imminent Danger of Physical Harm or Death, combined with Racial/felony disenfranchisement, and Prison-Based Gerrymandering for political gains, compromises the most fundamental aspect of democracy by removing the right to vote from the Plaintiff Jackson, Other Similarly Situated Incarcerated Persons At Stillwater Correctional Facility, and All other Minnesota Correctional Facilities and Contracted Half Way Housing, and Minnesota Association Of Community Corrections Act Counties County Jails.

17.     The use by the State of Minnesota Defendants; of State Statutes, Policies, Procedures and Practices, in combination - used to Obstruct and completely deny the Plaintiff Jackson the Right to Voting through the Alteration of voting qualifications; procedure and appeal; purpose or effect by diminishing, disenfranchise, and completely deprive the Plaintiff Jackson of the ability to hold Elected Officials Accountable through the Democratic process, and deprives the Plaintiff Jackson of the Constitutional Right to elect his preferred candidates of choice.

18.     The State Defendants named and not Yet Named State Defendants under Color of Law in their Official Capacities continue to use Prison-Based Gerrymandering practices, involving the Plaintiff Jackson After the Plaintiff Jackson's Arrest and eventual convictions and Imprisonment, beginning in May of 1997 continuing through present year 2022. Creating Mass incarceration for the purpose of benefiting from the Plaintiff Jackson's Race, Incarceration Status and housing placement at Stillwater Prison during each Census Count, Politically and Financially.

19.     The Thirteenth Amendments constitutional exception enacted by Congress which negatively affected persons like the Plaintiff Jackson who have been convicted of a Crime: and therefore are being subjected to the Sadistic Slavery constitutional provisions exception(**"Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction")** as Applied to the Plaintiff Jackson's Incarceration, is currently being used by the Defendants to completely suppress the Plaintiff Jackson's Constitutional Right to vote, through the complete Disenfranchisement and Abridgement of the Plaintiff Jackson's right to vote in the State, County, Municipal, and National Elections on account of the Plaintiff Jackson's Race and Status as a person who is incarcerated.

20.     The systemic uses of the unconstitutional State of Minnesota voting qualifications or prerequisites; establishment of violation, and systemic Prison-based Gerrymandering practices, which is the little-known practice that involves determining the areas elected officials represent with census

numbers that count prisoners as residents of where they are incarcerated. With those tallies, some

redistricting officials have created local voting districts filled mostly with people who are locked behind

bars and, in most state like Minnesota cannot vote.

21. The Plaintiff Jackson is currently confined in the Stillwater Close Custody Level Four Correctional

Facility in the City of Bay Port Minnesota located in Washington County. For the census purposes, the

federal government has counted incarcerated people like the Plaintiff Jackson where he is locked up,

including jails, since the first national tally in the year 1790. That's when federal law specified that

people should be counted at their usual place of abode, which the Census Bureau has interpreted to

mean where the Plaintiff Jackson lives and sleep most of the time.

22. The census also determines the distribution of federal dollars for many government programs.

Based on the 2010 census data, Minnesota received $15,459,175,947 in fiscal year 2016 through federal

spending programs. These funds are spent on government programs for food (i.e., Supplemental

Nutrition Assistance Program (SNAP), Women, Infants, and Children (WIC), & Child and Adult Care Food

Program), healthcare (i.e, Medicaid, Medicare Part B, & State Children's Health Insurance Program (S-

CHIP)), education (I.e., Head Start, Title 1 funding, Pell grants, & special education grants), and financial

assistance/housing (I.e., Section 8, Temporary Assistance for Needy Families (TANF), community

development block grants, & highway funding).

23. The Plaintiff Jackson, is being counted in District 56A, Washington County/ City of Bay port

Minnesota, where there is a total of two Prisons located; Stillwater Level Four Close Custody Facility and

Oak Park Heights Maximum/Super Maximum-Security prison, the 2010 Census calculated the combined

Prison population totals in District 56A at 1,746. The Washington County African American, Black

population is 5.6% where directly north of Washington County, Chisago County which where Rush City

Correctional Facility is located, the African American, Black population is 1.5%. These are

predominantly all white Districts.

24.     There are currently eight Congressional Districts located in the state of Minnesota. According to the data collected by the state demographer, four prisons are located in Minnesota's 6th District (Lino Lakes, Bayport, Oak Park Heights, & St. Cloud), six prisons are located in the 8th District (Moose Lake, Rush City, Itasca Co., Sturgeon Lake, Sandstone, & Shakopee), and three prisons are located in the 2nd District (Red Wing & Shakopee), and three prisons are located in the 1st District (Rochester, Faribault, & Waseca).

25.     There are no state correctional facilities located in the 7th, 3rd, 5th, or 4th District (three of which are located within the Twin-Cities Metro area – and therefore are the most populated areas in Minnesota).

26.     With six prison located in Minnesota's 8th District, it is has truly benefited from prison gerrymandering. According to the Census Bureau, Minnesota's 8th District had 671,346 people living there in 2019. However, this number has been padded by the prison population of approximately 4,256 people incarcerated in Minnesota's 6th district in 2019approximatly 4,339 of whom were incarcerated in 1 of its 4 prisons.

27.     All of the congressional districts are meant to have approximately the same number of people within their borders. Based on the data above, citizens in the 8th District and 6th District are overrepresented by approximately 4,256 and 4,339 people respectively. Complicating matters is the fact that people who are incarcerated such as the Plaintiff Jackson, are not allowed to vote.

28.     Therefore, this means there are less voters in the 6th and 8th Districts which elect their elected officials. However, these, constituents in the 6th and 8th District still have the exact same amount of representation and weight in Congress as other districts which have more eligible voters.

29.     In fact, the process of counting disenfranchised persons who are incarcerated such as the Plaintiff Jackson in locations where the Plaintiff Jackson, is incarcerated has been compared to the Three-Fifth's Clause of the Constitution. This clause originally counted only three-fifths of every Black person living in slave-holding states for purposes of determining representation in Congress. Due to this compromise with the Southern states, the political representation of the South increased from approximately 38 percent of

seats in the Continental Congress to nearly 45 percent of the seats in the inaugural United States Congress.

30.     Many politicians have admitted to not viewing the person who are incarcerated such as the Plaintiff Jackson, whom reside inside the walls of their districts' prisons as their constituents. This is problematic because state representatives have not advocated for prisoner's rights.

31.     According to the Minnesota Secretary of State, convicted felons such as the Plaintiff Jackson, are not allowed to vote if the Plaintiff Jackson is currently serving a sentence, on probation, parole, or supervised release. Since the Plaintiff Jackson is not allowed to vote, I am considered among the country's least powerful people.

32.     The Plaintiff Jackson cannot vote to change prison gerrymandering or advocate for any other policies which affect the Plaintiff Jackson's life. For instance, during the 2020 COVID-19 pandemic, many members of congress were responsible for determining whether to prioritize persons who are incarcerated for vaccine. A solution was proposed to the House of Representatives in February 2021 with the American Rescue Plan. The American Rescue Plan was a bill which included a section to provide funding for prisons for COVID-19 tests, vaccinations for persons who are incarcerated, and personal protection equipment.

33.     Currently, Republican members of Congress represent the 8th and 6th congressional districts. Pete Stauber represents the 8th district, and Tom Emmer represents the 6th district. However, both Pete Stauber and Tom Emmer voted against passing the American Rescue Act – and effectively against the interest of the persons who are incarcerated in their districts. The Eighth Amendment's ban on inflicting cruel and unusual punishments, made applicable to the States by the Fourteenth Amendment, proscribes more than physically barbarous punishments. It prohibits penalties that are grossly disproportionate to the Plaintiff Jackson's offense, as well as those that transgress todays broad and idealistic concepts of dignity, civilized standards, humanity, and decency.

32.     The Minnesota Department of Corrections Defendants as an Agency and as the arm of the State of Minnesota, has an incarcerated rate of 342 per 100,000 people, including prisons, jails, immigration detention, and juvenile facilities, meaning that the State of Minnesota locked up a higher percentage of its people than almost any democracy on earth.

33.     The STATE OF MINNESOTA SECRETARY OF STATE Office, absolutely prohibits the Plaintiff Jackson from voting, the Plaintiff Jackson is under legal disability impeding his legal right to register or to vote; the Plaintiff is also denied any alternative means of casting his vote because The Office of The STATE OF MINNESOTA SECRETARY OF STATE does not furnish the Minnesota State Prison Facilities such as Stillwater Prison with special polling booths or Absentee Ballots.

34.     The Defendants Actions are conscience-shocking, egregious and outrageous, there conduct is so severe, so disproportionate to the need presented and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounts to a brutal and inhumane abuse of official power.

35..     As Relevant, section 1983 provides, **"Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, Subjects, or causes to be Subjected, any citizen of the United States or other person within the jurisdiction thereof to the depravation of any rights, privileges,, or immunities secured by the Constitution and Laws, Shall be liable to the party injured in an action at law, suit in equity, or other property proceeding for redress"... 42 U.S.C § 1983."** Therefore, the Supremacy Clause of the United States Constitution (Article VI, Clause 2) establishes that the Constitution, Federal laws made pursuant to it, and treaties made under its Authority, Constitute the Supreme law of the Land.

36.     Plaintiff Jackson, is and was at all times mentioned herein a prisoner of the State of Minnesota in the Custody of the Minnesota Department of Corrections. The Plaintiff Jackson is currently confined in

the Stillwater Close Custody Level Four Correctional Facility in the City of Bayport Minnesota, and is under voting disability pursuant to the State of Minnesota's unconstitutional voting restriction Laws. Imposed upon the Plaintiff Jackson Since the Plaintiff Jackson's Arrest in May of 1997, and eventual convictions, the Plaintiff Jackson continues to be denied the right to register to vote and the Right to Vote under mobile registration, absentee voting, or other procedures.

37.     The Plaintiff Jackson is therefore bringing this action challenging the constitutionality of the State of Minnesota election Laws, practices, and procedures. The contested statutes, practices and procedures, completely disenfranchises the Plaintiff Jackson, constitutional Right to vote and do not allow the Plaintiff Jackson to Vote or register to Vote.

38.     The Plaintiff Jackson's confinement in any penal facility in the States of Minnesota, is a physical disability which entitles the Plaintiff Jackson to vote by absentee ballot and raise issues of disenfranchisement by the Plaintiff Jackson who is Black, and a person convicted of criminal conduct and not permitted to vote or register to vote.

39.     The Plaintiff Jackson States that the Census Bureau has always counted Incarcerated Persons like the Plaintiff Jackson as residents of the prison location which in this case is Washington County and Bayport Minnesota, but it is only over the course of recent years that the prison population is large enough to effect legislative districting. In the past 30 years, the rate of incarceration has risen dramatically, more than quadrupled, in Minnesota in 1977 only 44 out of every 100,000, Minnesotans were incarcerated, by 2007, that rate jumped to 181 per 100,000.

40.     As of July 1, 2009, there were over 9,000 people incarcerated in Minnesota. About 35.4% of those similarly situated Incarcerated Persons are Black like the Plaintiff Jackson, compared to 4.6% of the general Minnesota population. [2] about 6.8 of the people incarcerated in Minnesota are American Indian, compared to 1.2% of the general Minnesota Population. [3] Because the prison population is growing

faster than Minnesota as a whole, and because Minnesota's prison system has one of the largest racial disparities in its prison system in the country, the need for an accurate count of the Minnesota prison population is even more urgent.

41.     There are now so many people behind bars in Minnesota that the question of where this population is counted is large enough to have a direct impact on democracy, by Minnesota Law, Incarcerated Persons like the Plaintiff Jackson can't Vote and do not remain residents of the Plaintiff Jackson's home community. The Washington County African American, Black population is 5.6% where the directly north of Washington County, Chisago, is 1.5%. By relying on Census Bureau counts of prison populations, which pads out legislative districts with prisons, Minnesota is inflating the vote of residents who live near prisons at the expense of every other resident.

42.     The Law makers who represent the Washington County/City of Bayport Area, do not feel the same responsibility towards the Plaintiff Jackson, who is housed at Stillwater Prison, as they do for their other constituents and the State Legislators have failed to inquire about the welfare of the Plaintiff Jackson or represent the Plaintiff Jacksons interests regardless of being put on notice by the Plaintiff Jackson through previously filed Civil Actions regarding the Cruel And Unusual Prison Conditions that are toxic as it relates to Stillwater Level Four Close Custody Correctional Facilities; policies, procedures, practices, Inadequate and depleted facility/Physical Plaint , etc, individual Misconduct of Prison Staff, In additions to Excessive punishment regarding The Plaintiff Jacksons' Criminal Sentences.

43.     Disenfranchisement is amongst the most unnecessary and wanton inflictions of pain being inflected upon the Plaintiff Jackson by the Named Defendants, that is totally without penological justification, and is in conflict with the Mission and Goals of The Minnesota Department of Corrections Mandatory Directives, pursuant to Department Policies and State and Federal Statues that govern the Plaintiff Jackson's; Custody, Care, and Rehabilitation.

44.     The purpose of the Thirteenth Amendment was, of course, to abolish African slavery and practices related or analogous thereto, and not to be used as a means to suppress the Voting Rights of the Plaintiff Jackson who is Black. It will be observed that the Thirteenth Amendment, unlike the Fourteenth and certain other Amendment, is more than a prohibition upon the States.

45.     The Thirteenth Amendment abolishes slavery and involuntary servitude, except as punishment for crime, everywhere in the United States, its Territories, and possessions. However, the concept of "cruel and unusual punishment" is not limited to instances in which the Plaintiff Jackson is subjected to a punishment directed at him as an individual.

46.     Confinement itself within a given institution may amount to a cruel and unusual punishment prohibited by the Constitution where the confinement is characterized by conditions and practices so bad as to be shocking to the conscience of reasonable civilized people even though the Plaintiff Jackson may never personally be subjected to any disciplinary action.

47.     To put it another way, while confinement, even the Disenfranchisement of the Plaintiff Jackson's right to vote in Elections is not considered to be necessarily a cruel and unusual punishment, it may be so in certain circumstances and by reason of conditions of confinement, that are cruel and unusual punishment.

48.     In the instant complaint, the Plaintiff Jackson contends that the blanket disenfranchisement of the Right to Vote by the State of Minnesota is Cruel and Unusual Punishment and such Disenfranchisement cannot be supported by either a compelling or rational policy interest being enforced by the Defendants Acting as the arm of the State of Minnesota Government.

49.     The Plaintiff Jackson is as much affected by the actions of government as any other citizen, and has as much right to participate in governmental decision making regarding the Elected Governors Tim Walz Cabinet appointments; for example  the Minnesota Department of  Commissioner Corrections Paul

Schnell, who has the power to remedy the overall toxic conditions in the Minnesota penal system caused by mass incarceration, including but not limited to The Eighth Amendment's ban on inflicting cruel and unusual punishments, made applicable to the States by the Fourteenth Amendment, which prohibits penalties that are grossly disproportionate to the offense, for which the Plaintiff Jackson was convicted, as well as those that transgress todays broad and idealistic concepts of dignity, civilized standards, humanity, and decency. Such as;

50.     Condition of Confinement that are not limited to instances of the absence of meaningful or adequate: Prison Higher Educational Space and Staffing/Evidence based clinically Programing/General Education program funding, equipment, infrastructure and Adequate Programming staffing to provide realistic effective Transformation regarding the Plaintiff Jackson and Other similarly situated incarcerated Persons Lives to promote a safer Minnesota.

51.     The Commissioner Paul Schnell has the power to remedy the For-Profit use of the Plaintiff Jackson Labor by MNDOC & MINNCOR, A Minnesota Department of Corrections Division that manufactures goods using inmate labor and other contracted forced labor, and Punitive Labor practices through Means of Chattel Slavery – Like Conditions that are not part of the Plaintiff Jackson's Sentence. MINNCOR Industries was Established for the purpose of providing adequate, regular and suitable employment, educational training, and to aid the Prisoners of State correctional facilities.

52.     The Elected Governor Tim Walz,  Cabinet Appointee JOSH TILSON, Minnesota Bureau of Mediation Services, has the power to remedy Violations regarding the  Employee Representative established for the Minnesota Department of Corrections Staff at each Correctional Facility and Agency, who are Represented by two Separate and Independent Union Representative Agencies for profit (AFSCME American Federal State Municipal Employees) (MAPE: Minnesota Association for Professional Employees) both Unions activities became overtly subversive to the functioning of the Department. Riots and chaos have been the result, as well as the intentional and nontherapeutic infliction of physical

pain or injury, or any persistent course of conduct intended to produce mental or emotional distress upon the Plaintiff Jackson.

53.     The existence of the AFSCME Counsel #5 Corrections Guard Union has created a divisive element within the inmate population Also not to mention the tension between both Staff and Incarcerated persons which has Now resulted in several Stabbings regarding Staff and Incarcerated persons with Metal Prison Shanks, and the Low morale of both the Plaintiff Jackson, similarly situated incarcerated persons and staff. In a time when the Cellblocks at Stillwater Correctional Facility which are already seriously over-crowded with unemployed incarcerated persons such an element has greatly aggravated already tense conditions jeopardizing the Plaintiff Jackson Health & Safety.

54.     The Plaintiff Jackson is being consistently subjected to Constant Recreation/Yard Closures, No Sun Light or Access to Fresh Air, and no Adequate ventilation System, and Inadequate/over 114year old plumbing system, not to mention the many misappropriations of Federal and State appropriated funding and Grants that is not limited to; recreation funding misappropriations, Misappropriations of COVID Relief Funding Request, Misappropriations of Legislative Appropriated funding requested for the Safety and Wellbeing of the Plaintiff Jackson.

55.     The Misappropriations of Federal Grants requested and received by the MNDOC Defendants for the Wellbeing of the Plaintiff Jackson, and those policies, procedures, practices relating to the Plaintiff Jackson's safety, Housing, visiting, and Religious resources, etc, are so bad that it amounts to cruel and unusual punishment to continue to expose the Plaintiff Jackson to these toxic conditions, regardless of how those conditions may operate fortuitously on the Plaintiff Jackson.

56.     Governor Tim Walz has Authority over the Minnesota Sentencing Guidelines Commission Appointments, who has in the past and presently continuing to subject the Plaintiff Jackson to Racial Injustices and Discrimination Due to the Plaintiff Jackson Criminal Offenses and The Plaintiffs Jacksons Race, to what has Amounted to Human Rights Violations and the human trafficking of the Plaintiff Jackson

17

through the Minnesota Criminal Justice System. These are just a few examples of how the State of Minnesota's Disenfranchisement of the Plaintiff Jacksons Right to Vote continues to impede and frustrate any efforts by the Plaintiff Jackson to hold Elected officials accountable through the Democratic process which can only be accomplished through the Right to Vote.

57.     In the Plaintiff Jackson's view, the disenfranchisement of the right to vote by the States of Minnesota, based upon the Plaintiff Jacksons' Race and Status as a Person who is incarcerated, must be measured against the requirement of the Equal Protection Clause of section 1 of the Fourteenth Amendment. That analysis properly begins with the observation that because the right to vote is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government, voting is a fundamental right.

58.     The Plaintiff Jackson who is a United States Citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction. The challenged Minnesota State statutes and State Constitution grants the right to vote to some citizens and denies the franchise to others, therefore the Court must determine whether the exclusions are necessary to promote a compelling state interest.

59.     The Plaintiff Jackson hereby serves notice upon the court, that regarding this matter before the court to determine whether or not the compelling-state-interest test applies to the challenged classification is, however, to settle only a threshold question. Compelling state interest is merely a shorthand description of the difficult process of balancing individual and state interest that the Court must embark upon when faced with a classification touching on fundamental rights.

60.     The Equal Protection Clause is not shackled to the political theory of a particular era. In determining what lines are unconstitutionally discriminatory, the Courts have never been confined to historic notions of equality, any more than the courts have restricted due process to a fixed catalogue of what was at a given time deemed to be the limits of fundamental rights.

61.      The State of Minnesota Defendants have the heavy burden of showing, first that the challenged disenfranchisement is necessary to a legitimate and substantial state interest; second, that the classification is drawn with precision- that it does not exclude too many people who should not and need not be excluded; and, third, that there are no other reasonable ways to achieve the State's goal with lesser burden on the constitutional protected interest.

62.      There is certainly no basis for assertion by the Defendants, that the Plaintiff Jackson has no less interest in the democratic process than any other citizen. Like everyone else, the Plaintiff Jacksons' daily life as a Person who is Incarcerated is deeply affected and changed by the decisions of the government and those acting as the arm of the State of Minnesota, as any other citizen, and have as much right to participate in governmental decision-making. Furthermore, the total disenfranchisement of the Plaintiff Jackson's right to vote, is a hindrance to the efforts of society to rehabilitate Persons who are incarcerated and convert such persons like the Plaintiff Jackson into- law-abiding and productive citizens.

63.      The distinguishing aspects of Minnesota penitentiary life and the total Disenfranchisement of the Plaintiff Jackson's Constitutional Right to Vote based upon the Plaintiff Jackson Race, Status as a Person who is Incarcerated, and Prison Based Gerrymandering for political gains, must be considered together, all those things exist in combination; each affecting the other; and taken together they have a cumulative impact on the Plaintiff Jackson as well as those that transgress todays broad and idealistic concepts of dignity, civilized standards, humanity, and decency. regarding the Plaintiff Jackson's unconstitutional status as a Slave and Not a United States Citizen.

64.      The Thirteenth Amendments exception applicable to the Plaintiff Jackson's status as a Black Person who is Incarcerated;  **"Slavery and Involuntary Servitude " except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction",** cannot be reconciled with both the Eighth Amendment Prohibition against Cruel & Unusual Punishment and todays Evolving Standards of Decency of a Maturing Society and

therefore must be overruled and abolished from both the State and United States Constitutional Amendments.

65.     The State must show a compelling state interest to justify exclusion of the Plaintiff Jackson from the franchise, however The State of Minnesota Defendants Acting as the Arm of the state; have not done so, and cannot do so.

## VI. FACTUAL ALLEGATIONS

**66.      Provide each defendant's full name, official position, and place of employment. Attach additional sheets of paper, if necessary.**

**67.      NOTE: All Named Defendants and Not Yet Named Defendants directly and indirectly involved in the ongoing complicit Conspiracies to violate the Plaintiff Tony Dejuan Jackson's Constitutional Rights are being Sued in pursuant to their Official Capacities.**

### ALLEGATIONS AGAINST INDIVIDUAL DEFENDANT'S:

**68.      STEVE SIMON, SECRETARY OF STATE, Official Capacity,** is deliberately a Party to a continued Conspiracy to interfere with the Constitutional Rights and Civil Rights of the Plaintiff Jackson as described in Paragraph ( **1 - 76** ) At all times mentioned in this complaint STEVE SIMON, and each Defendant was the agent of the other and was acting within the course and scope of this agency, and all acts alleged to have been committed by any one of them was committed on behalf of every other Defendant.

**69.      PAUL SCHNELL, COMMISSIONER OF DEPARTMENT OF CORRECTIONS, Official Capacity,** is deliberately a Party to a continued Conspiracy to interfere with the Constitutional Rights and Civil Rights of the Plaintiff Jackson as described in Paragraph ( **1 - 76** ) At all times mentioned in this complaint, PAUL SCHNELL and each Defendant was the agent of the other and was acting within the course and scope of this agency, and all acts alleged to have been committed by any one of them was committed on behalf of every other Defendant. Pursuant to Minn. Stat. 241.01 Subdivision 3a. Commissioner, powers and duties.

**REQUEST FOR RELIEF:**

70.      The Plaintiff Jackson has no Plain adequate or complete remedy at law to redress the wrongs described herein. The Plaintiff will continue to be irreparably injured by the conduct of the defendants unless this court grants the Requested Remedies necessary to force the much need change regarding the Continuing Eighth Amendment Violations which amounts to ongoing systemic Disenfranchisement of the Plaintiff Jacksons Constitutional Right to Vote   abuses and Cruel & Unusual Punishment.

71.      The Defendants Actions are conscience-shocking, egregious and outrageous, there conduct is so severe, so disproportionate to the need presented and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounts to a brutal and inhumane abuse of official power, and the Discriminatory Culture of the Defendants.

72.      The Plaintiff Jackson Seeks Prospective Injunctive Relief for continued violations of Federal Law; Preliminary and Permanent Injunctions and Declaratory Relief Regarding Ongoing Constitutional Violations as described in the Civil Complaint:

73.      [1] The Plaintiff Jackson, Seeks Declaratory relief requiring:(1) That the Disenfranchisement of the Plaintiff Jackson Constitutional Right to Vote on the bases of the Plaintiff Jacksons Race and Status as person who is incarcerated, is Cruel and Unusual Punishment and therefore is Barred by the Eighth Amendment's Provisions of The Untied States Constitution.

74.      [2] The Plaintiff also Seeks Prospective Injunctive and Permanent Injunctive Relief for continuing violation of Federal law barring the Defendants acting as the Arm of the States of Minnesota, from both present and future Disenfranchisement of the Plaintiff Jacksons Constitutional Right to Vote.   The Plaintiff Jackson also reserve the right to expand on the requested relief that the Plaintiff Jackson is seeking from the Court at a later date.

The Need for relief is critical because the rights at issue are paramount under the United States Constitution and laws of the United States.

75. A.     The Plaintiff is ignorant of the true names and capacities of Defendants sued in this complaint and therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believe, and thereon allege, that each of the fictitiously named Defendants is personally responsible in some manner for the occurrences alleged in this complaint.

76. B.     At all times mentioned in this complaint, each Defendant was the agent of the other and was acting within the course and scope of this agency, and all acts alleged to have been committed by any one of them was committed on behalf of every other Defendant.

77.     I hereby certify under penalty of perjury that the above Amended Civil Complaint and Exhibits are true to the best of my (our) information, knowledge, and belief.

Signed this day of _December 4th 2022_____ ,2022

Signature(s) of Plaintiff(s) _Tony D Jackson_____ .

BY:     TONY DEJUAN JACKSON
        PLAINTIFF – PRO SE
        PERSON WHO IS INCARCERATED #197562