UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Tony Dejuan Jackson, | Civ. No. 22-3034 (PAM/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| Steve Simon, State of Minnesota Secretary of State; and Paul Schnell, Commissioner of the Minnesota Department of Corrections, | |
| Defendants. | |

This matter is before the Court on Defendants Steve Simon and Paul Schnell's Motion to Dismiss. (Docket No. 10.) For the following reasons, Defendants' Motion is granted.

**BACKGROUND**

Plaintiff Tony Dejuan Jackson brings this action under 42 U.S.C. § 1983 claiming violations of his constitutional and statutory voting rights. (See generally Compl. (Docket No. 1).) In brief, Jackson alleges that Defendants have violated the Eighth, Thirteenth, and Fourteenth Amendments, the Voting Rights Act of 1965, and his civil rights under 42 U.S.C. §§ 1985 and 1986, because he is incarcerated pursuant to several felony convictions and therefore cannot vote. Defendants move to dismiss Jackson's claims.

**ANALYSIS**

To survive a motion to dismiss under Rule 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Fed. R. Civ. P. 12(b)(6).  A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  When evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept plausible factual allegations as true. Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to support a claim.  Iqbal, 556 U.S. at 678.  At this stage, the Court assumes the allegations in the Complaint are true and views them in the light most favorable to Jackson.  See Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 933 n.4 (8th Cir. 2012).  Jackson fails to allege any facts that would entitle him to any relief, and, in any event, Jackson's claims fail as a matter of law.

**A.     Constitutional Claims**

Jackson fails to sufficiently allege any state or federal constitutional claim.  He argues that voting is a fundamental right, and thus that any laws restricting a person's right to vote are subject to strict scrutiny.  (See, e.g. Compl. ¶ 57.) He is mistaken.  Incarcerated individuals do not have a fundamental right to vote.  Indeed, the Fourteenth Amendment allows states to prohibit people from voting for "participation in rebellion, or other crime[s]," U.S. Const. amend. XIV, § 2, and Minnesota has long prevented felons from voting until they complete their sentences.  Minn. Stat. §§ 201.014 subd. 2(1), 609.165, subds. 1, 2.  All but two states disenfranchise incarcerated felons. National Conference of State Legislatures, Felon Voting Rights, https://www.ncsl.org/elections-and-

2

campaigns/felon-voting-rights (last updated March 7, 2023).  In Richardson v. Ramirez, the Supreme Court affirmed that the disenfranchisement of convicted felons did not run afoul of the Constitution.  418 U.S. 24, 54-56 (1974).  Jackson's characterization that the holding in Richardson was "mere dicta" is utterly unfounded.  See Richards v. Dayton, No. 13cv3029, 2015 WL 1522199, at *29 (D. Minn. Jan. 30, 2015) (Mayeron, M.J.).

Jackson further alleges that Defendants have violated the Eighth and Thirteenth Amendments by disenfranchising him.  (Compl. ¶¶ 11-12, 19.)  The Eighth Amendment prohibits cruel and unusual punishment, and the Supreme Court has held that the "nonpenal exercise of the power to regulate the franchise" does not run afoul of the Constitution.  Trop v. Dulles, 356 U.S. 86, 97 (1958).  Indeed, "after incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  Whitley v. Albers, 475 U.S. 312, 319 (1986) (quotations omitted) (cleaned up).  Jackson alleges no plausible facts supporting his claim that preventing felons or incarcerated people from voting equates to cruel and unusual punishment.  Although he contends that the conditions at his facility amount to cruel and unusual punishment, he fails to allege facts that rise to such a level, or to plausibly allege that any conditions at his facility are the result of his inability to vote. (Compl. ¶¶ 46, 49-55.)  Jackson's Thirteenth Amendment claim is likewise implausible because the Thirteenth Amendment, which prohibits slavery and involuntary servitude, contains no prohibition regarding disenfranchising felons, during or after their incarceration.

Additionally, Jackson claims that Defendants have violated his equal-protection rights under the Fourteenth Amendment, by denying his right to vote based on his race,

3

because he is Black.  (Id. ¶¶ 1-2, 57.)  He claims that Black men are disparately impacted by laws disenfranchising felons, because they make up a higher percentage of Minnesota's incarcerated population.   (Id. ¶ 40.)  The Supreme Court has limited the types of classifications that are subject to protection under the Equal Protection Clause to those that share "an immutable characteristic determined solely by the accident of birth," Frontiero v. Richardson, 411 U.S. 677, 686 (1973), or that have been subject to a "history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process."  San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 28 (1973).  Classifications that are subject to protection under the Clause are limited to those such as race, alienage, national origin, religion, and gender." Gallagher v. City of Clayton, 699 F.3d 1013, 1018 (8th Cir. 2012).  There is no such classification for incarcerated people, and Jackson has not plausibly alleged that there is any class of Black prisoners who are subject to different treatment than their counterparts of other races.

Regardless, Jackson fails to state an equal-protection claim because he does not allege facts to "demonstrate[] that []he was treated differently than others who were similarly situated to h[im]." Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir. 1994). Even construing Jackson's allegations as true, disparate impact is insufficient to show intentional discrimination; thus, Jackson fails to establish any intentional discrimination to support an equal-protection claim.  Pers. Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 272 (1979).  Moreover, Jackson fails to allege any facts supporting that he is similarly situated to people who have the right to vote in Minnesota.  Even if he could do so,

4

Minnesota law disenfranchising incarcerated people undoubtedly survives rational-basis review.  Jackson's constitutional claims therefore fail.[1]

## B.     Voting Rights Act and Prison Gerrymandering

Jackson claims that Defendants have violated the Voting Rights Act by disenfranchising him and for alleged gerrymandering.  Specifically, while Jackson contends that Defendants violated Section 5 of the Voting Rights Act of 1965 (Compl. ¶¶ 9, 13), Section 5 has never applied to Minnesota.  See Shelby Cnty., Ala. v. Holder, 570 U.S. 529, 537-38 (2013).  Therefore, any claim under Section 5 fails at the outset as a matter of law.  However, liberally construing the Complaint, and because Jackson cites no law regarding his prison-gerrymandering assertions, his allegations could be construed as bringing a claim under Section 2 of the Voting Rights Act.  (See, e.g., Compl. ¶¶ 2, 8, 14, 20, 26, 63.)

Assuming that Jackson intends to claim a violation of Section 2, he must allege sufficient facts to demonstrate that:  "(i) '[the incarcerated Black population] is sufficiently large and geographically compact to constitute a majority in a single-member district'; (ii) the group is 'politically cohesive'; and (iii) 'the white majority votes sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate.'"  Reno v. Bossier Par.

---

[1]     In Jackson's Memorandum in Opposition, he raises what could be construed as another equal-protection claim, alleging that Minnesota's congressional districts are race-based because the inmates in a given district are disproportional members of a minority class. (Docket No. 15 at 14-15.)  Jackson failed to plead this claim in his Complaint, the Court need not address it.  Even if Jackson had properly pursued this claim, it would fail because Jackson does not articulate how he has ostensibly been harmed by Minnesota's district boundaries.

5

Sch. Bd., 520 U.S. 471, 479 (1997) (quoting Thornburg v. Gingles, 478 U.S. 30, 50-51 (1986)); see Cooper v. Harris, 581 U.S. 285, 301-02 (2017).  While Jackson repeatedly contends that Minnesota's prison locations indicate racial gerrymandering, such conclusory allegations are insufficient to state a claim under Section 2.  Therefore, Jackson fails to plead facts to satisfy any element of a gerrymandering claim.

Further, because Jackson fails to sufficiently allege a civil-rights violation, his Sections 1985 and 1986 claims also fail.  See Liscomb v. Boyce, 954 F.3d 1151, 1155 (8th Cir. 2020).  In sum, Jackson's conclusory allegations fail to state claim upon which relief can be granted; thus, Defendants' Motion is granted.

After Defendants filed the Motion to Dismiss, the Court ordered a briefing schedule, providing for a memorandum in opposition and a reply memorandum.  Jackson then filed an additional, unauthorized memorandum; because sur-replies are not appropriate under either the Local Rules or this Court's specific order in this case, the Court need not consider that memorandum.  But even if Jackson had properly filed the sur-reply, only a single page of that document relates to Jackson's claims here, and he merely reiterates the arguments in his opposition.  To the extent that the unauthorized sur-reply purports to complain about prison conditions or the imposition of filing sanctions on Jackson for his repeated frivolous filings, those claims were not raised in Jackson's Complaint and will not be addressed further.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** Defendants' Motion to Dismiss (Docket No. 10) is **GRANTED** and this matter is **DISMISSED with prejudice**. **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: <u>Friday, April 7, 2023</u>        <u>*s/ Paul A. Magnuson*</u>
                                          The Hon. Paul A. Magnuson
                                          United States District Court Judge